IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 21-cr-209 (CKK) |
| ) | |
| ANDREW ROBERTSON, ) | |
| ) | |
| ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Andrew Robertson, by his attorney, David W. Bos, Assistant Federal Public Defender, hereby submits the following memorandum in aid of sentencing in this matter. Pursuant to the sentencing factors set forth in 18 U.S.C. §3553(a) as delineated in *Rita v. United States*, 127 S. Ct. 2456 (2007), *Kimbrough v. United States*, 128 S. Ct. 558 (2007) and *Gall v. United States*, 128 S. Ct. 586 (2007), Mr. Robertson respectfully requests that the Court impose a sentence of five years probation, with the special conditions that Mr. Robertson pay restitution in the amount of $425,000; Mr. Robertson continue with his mental health treatment; and, complete twelve months of Home Confinement. Mr. Robertson submits that the requested sentence is "sufficient, but not greater than necessary, to comply with the purposes" set forth in 18 U.S.C. §3553. In support of this request, counsel states:

1. Mr. Robertson appears before the Court for sentencing after having pled guilty to one count of mail fraud, in violation of 18 U.S.C. §1341.

2. Mr. Robertson is 54 years old. He has seven criminal history points from just two prior convictions (one of which was a misdemeanor) and therefore is a Criminal History Category IV offender under the advisory sentencing guidelines.

3. As noted in the Pre-Sentence Report, Mr. Robertson has a strong and consistent

employment record. *Pre-Sentence Report* (*PSR*) at ¶¶74-82. He is presently employed as a facilities manager in New York and earns a six figure salary.

4. Mr. Robertson obtained his high school diploma in 1985 from South Shore High School on Brooklyn, New York, and has also completed course work at Pace University.

5. There is no evidence Mr. Robertson has ever abused any illegal substance.

6. Mr. Robertson has been under court supervision without incident for nearly two years.

7. The conduct upon which the instant charge is based occurred in 2017 through 2018 -- more than three years ago.

8. At the time he committed the instant offense, Mr. Robertson was suffering from untreated Clinical Depression. He is now receiving treatment for his depression at the Fieve Psychiatric Treatment Center in New York City. His treatment includes both medication and individual therapy sessions with his psychiatrist.

9. Mr. Robertson has significant medical conditions, as well: He is a cancer survivor; earlier this year, he was diagnosed with rheumatoid arthritis, after a mass was found on his lung; he suffers from anemia; and, he has severe sleep apnea requiring a CPAP machine to sleep at night. *See*, 18 U.S.C. §3553 (a)

10. Mr. Robertson is deeply remorseful for his conduct; and, pursuant to his plea agreement with the government, has agreed to pay $425,000.00 in restitution. Unlike many indigent criminal defendants who appear before the Court there is every reason to believe that Mr. Robertson will meet his restitution obligation in this case.

**DISCUSSION**

In imposing the sentence in this case, the Court must consider all the factors set

forth in 18 U.S.C. §3553(a).   *Gall v. United States,* 128 S. Ct. 586 (2007). Pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> © to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth in Title 18 U.S.C. §3553(a).

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that

[t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider

the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Although the Court is still required to consult the Guidelines in determining what sentence to impose pursuant to 18 U.S.C. §3553, the Court may not presume that the resulting guideline sentence is a correct one. *Rita v. United States,* 127 S. Ct. 2456, 2457. The Court is free to consider whether the guideline sentence itself "fails to properly to reflect §3553(a) considerations" in the case at hand. *Rita,* 127 S. Ct. at 2465.

**1. Advisory Guideline Range**

The Probation Department, using the 2018 edition of the Sentencing Guidelines Manual, has concluded that the Adjusted Offense Level in this case is 18 and that Mr. Robertson's Criminal History Category is IV, resulting in an advisory sentencing range for imprisonment of 41-51 months.

Mr. Robertson does not dispute the Probation Department's calculation of the guideline range in this case; however, Mr. Robertson submits that the Court should accord minimal deference to the advisory guideline range in this case; and, instead, the Court should impose a sentence consistent with the sentencing range set forth in 18 U.S.C. §1341, a Class C Felony, which envisions that some offenders be sentenced to probation.

Although the Court is still required to consult Sentencing Guidelines in determining the sentence to impose pursuant to 18 U.S.C. §3553, the Court may not presume that the resulting guideline sentence is a correct one. *Rita v. United States,* 127 S. Ct. 2456, 2457. Nor may the Court presume that the resulting guideline sentence is presumptively reasonable. *Nelson v. United States*, 555 U. S. 338 (2009)("The Guidelines are not only *not mandatory* on sentencing

courts; they are also not to be *presumed* reasonable")(emphasis original). The Court is free to consider whether the guideline sentence itself "fails to properly to reflect §3553(a) considerations" in the case at hand. *Rita*, 127 S. Ct. at 2465. The Court can also consider whether or not the advisory guideline exemplifies the Sentencing Commission's "exercise of its characteristic institutional role" of drafting guidelines using "an empirical approach based on past practices and national experience, guided by a professional staff with appropriate expertise." *Kimbrough v. United States*, 128 S. Ct. 558, 567, 570 (2007).  As Judge Adelman noted, "[t]o the extent that the advisory guidelines deserve continued respect form the courts, that respect will be greatest where the Commission has satisfied its institutional role of relying on evidence and study to develop sound sentencing practices." *United States v. Hanson*, 561 F. Supp. 2d 1004, 1009 (E.D. of Wisc. 2008). Where, however, the guideline does not represent the Commissions' exercise of its characteristic institutional role, the guideline deserves minimal deference. *Id. See also, United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008); *United States v. Baird* , 2008 WL 151258 (D. Neb. Jan. 11, 2008).

When Congress enacted the Sentencing Reform Act of 1984, it directed the Commission to promulgate guidelines that "assure the meeting of the purposes of sentencing," 28 U.S.C. § 991(b)(1)(A), and to use average sentences imposed and prison time actually served in the pre-guidelines period as a "starting point." 28 U.S.C. § 994(m).  The Commission was then to continually review and revise the guidelines in light of sentencing data, criminological research, and consultation with frontline actors in the criminal justice system.  *See* 28 U.S.C. § 991(b)(1)©, § 991(b)(2), § 994(o), § 995(13), (15), (16).  The original Commissioners abandoned the effort to design the guidelines based on the purposes of sentencing because they

could not agree on which purposes should predominate, and instead purportedly developed the guidelines based on an empirical study of time served for various offenses before the guidelines. *See* USSG, Ch. 1 Pt. A (3); Justice Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L. Rev. 1, 7 (1988).

In *Rita v. United States*, 551 U.S. 338 (2007), the Supreme Court gave two reasons that it may be "fair to assume" that the guidelines "reflect a rough approximation" of sentences that "might achieve § 3553(a)'s objectives." First, the original Commission used an "empirical approach" which began "with an empirical examination of 10,000 presentence reports setting forth what judges had done in the past." Second, the Commission can review and revise the guidelines based on judicial feedback through sentencing decisions, and consultation with other frontline actors, civil liberties groups, and experts. *Id*. at 348-50. The Court recognized, however, that not all guidelines were developed in this manner. See Gall v. United States, 552 U.S. 38, 46 & n.2 (2007); *Kimbrough v. United States*, 552 U.S. 85, 96 (2007). When a guideline "do[es] not exemplify the Commission's exercise of its characteristic institutional role," because the Commission "did not take account of 'empirical data and national experience,'" the sentencing court is free to conclude that the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Id.* at 109-10.

As noted below, U.S.S.G. §2B1.1 is an example of a guideline ***not*** based on empirical data of past practice or on national experience since then. Because the Commission failed to rely on empirical data or national experience in promulgating or amending U.S.S.G.§ 2B1.1, and thus failed to fulfill its institutional role, this Court is free to disagree, on reasoned policy grounds, with its recommendation. *See Pepper v. United States*, 562 U. S. __, __, Slip Op. at 23 (2011);

6

*Spears v. United States*, 129 S. Ct. 840, 843 (2009); *Kimbrough*, 552 U.S. 101-02, 109-10; *Rita*, 551 U.S. at 351, 357.

Under the presently enacted U.S.S. G. §2B1.1, Mr. Robertson's guideline range is 41 to 51 months imprisonment. Before the Guidelines, first offenders convicted of sophisticated fraud involving the *highest* loss amounts who were sentenced to prison served, on average, a prison sentence of only 18-24 months, and 18% of such defendants received probation. *See* U.S. Sent'g Comm'n, *Supplementary Report on the Initial Sentencing Guidelines and Policy Statements* (1987), http://www.src-project.org/wpcontent/pdfs/reports/USSC_Supplementary%20Report.pdf.

When the Commission adopted the original Guidelines in 1987, it "decided to abandon the touchstone of prior past practice" with respect to white collar offenses.  Breyer*, supra*, 17 Hofstra L. Rev. at 22-23. The Commission required some form of confinement for all but the least serious cases, and adopted a fraud guideline requiring no less than 0-6 months and no more than 30-37 months for defendants in Criminal History Category I.  *See* USSG § 2F1.1 (1987). The Commission explained that "the definite prospect of prison, though the term is short, will act as a significant deterrent to many of these crimes, particularly when compared with the status quo where probation, not prison, is the norm." U.S.S.G., ch. 1, intro., pt. 4(d) (1987); *see also* U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform 56 (2004) [hereinafter Fifteen Year Report*] (Commission sought to ensure that white collar offenders faced "short but definite period[s] of confinement").

The Commission's deterrence rationale was not based on empirical data or national experience. The empirical research regarding white collar offenders shows no difference between

the deterrent effect of probation and that of imprisonment. *See* David Weisburd *et al.*, *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995). "[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders." Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 448-49 (2007).

Moreover, the Commission quickly abandoned its original goal of ensuring "short but definite" sentences. Beginning just two years after the Guidelines went into effect, prison sentences for fraud offenders were steadily increased, again without empirical data to support the increases. In Mr. Robertson's case, those unsupported increases have raised his Total Offense Level from 11[1] to 18, and raised his guideline range from 18-24 months to a staggering 41-51 months.

## 2. Imposition of Sentence Pursuant 18 U.S.C. 3553

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or

---

[1] Under the 1987 Guidelines, Mr. Robertson's Base offense Level would be 4 pursuant to U.S.S.G. 2B1.1. There would be a 9 level increase in the base offense level based on an intended "loss amount" between $200,001 and $500,000. U.S.S.G. 2B1.1(b)(1)(J). With a two-point reduction for Acceptance of Responsibility, Mr. Robertson's Adjusted Offense Level would be 11. An offense level of 11, coupled with a Criminal History Category of IV, results in a recommended advisory guideline range of 18-24 months.

other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

**Nature of the Offense**

Mr. Robertson in no way intends to diminish the seriousness of this offense, but notes that the crime for which he stands convicted is not crime of violence or drug trafficking offense. The instant charge is a Class C felony and carries no mandatory minimum sentence; Congress, therefore, envisioned that some defendants convicted under the statute receive probationary sentences.

**Need for Deterrence**

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tony, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." *Id.; see also* Ziv D. Gabby, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardhouse J. Conflict Repsol. 421, 447-48 (2007) ("[Certainly of punishment is empirically known to be a far better deterrent than its severity."). Typical of the findings on general deterrence are those of the

Institute of Criminology at Cambridge University. See Andrew von Hirsch et al., *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. *Id.* at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id.* While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." *Id.* at 2. The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id.* at 1. Research regarding white collar offenders in particular (presumably the most rational of potential offenders) found no difference in the deterrent effect of probation and that of imprisonment. See David Weisberg et al., *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995); *see also* Gabby, *supra*, at 448-49 ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders.").

**Kinds of Sentences Available**

This Court must now consider all of "the kinds of sentences available" by statute, § 3553(a)(3), even if the "kinds of sentence . . . established [by] the guidelines" zones recommend only a lengthy prison term. See *Gall*, 128 S. Ct. at 602 & n.11. Further, Congress directed the Commission to "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense," and the "general

appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury." 28 U.S.C. § 994(j).

Congress issued this directive in the belief that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," and that "in cases of nonviolent and non-serious offenders, the interests of society as a whole as well as individual victims of crime can continue to be served through the imposition of alternative sentences, such as restitution and community service." *See* Pub. L. No. 98-473, § 239, 98 Stat. 1987, 2039 (1984) (set forth at 18 U.S.C. § 3551 note). Mr. Robertson is plainly not a "violent and serious offender" who "pose[s] the most dangerous threat to society."

**Character of the Defendant**

Mr. Robertson is 54 years old. He has been gainfully employed for most of his adult life, and he now holds a job that provides healthcare and pays him a six-figure income. He has never married and has no children. And there is no evidence substance abuse. While outwardly, it appeared that he had "normal" childhood, Mr. Robertson in fact had a very traumatic childhood that involved severe abuse which, only recently, Mr. Robertson was able to disclose. *PSR* at ¶ 64. Mr. Robertson's successes therefore are particularly noteworthy given the obstacles of his turbulent childhood.

As noted in the Pre-Sentence Report, Mr. Robertson suffers from a number is serious health issues, including high blood pressure; anemia; migraines; and, severe sleep apnea, which requires his to use a CPAP machine to sleep at night.

In 2018, Mr. Robertson underwent aggressive radiation treatment and chemotherapy

treatment for Stage 1 throat cancer. Earlier this year Mr. Robertson began receiving treatment for rheumatoid arthritis after a PET scan revealed a small mass on his lung.

The Probation Department has noted that the abovementioned significant health conditions support a variance in this case under 18 USC §3553(a)(1).

After the death of his mother in 2017, and shortly before he engaged in the conduct that now brings him before the Court, Mr. Robertson began to experience bouts of depression. The depression went untreated until after his arrest in this case when he was evaluated and diagnosed with Clinical Depression.

Mr. Robertson is currently receiving mental health treatment at the Fieve Psychiatric Treatment Center New York City. He meets with his psychiatrist on a biweekly basis and has been prescribed Bupropion, Quetiapine and Sertraline to treat his depression. Mr. Robertson reports that his treatment has been "life changing" and he deeply regrets not having sought out treatment years ago.

As the Court well knows, no sentencing decision is simple. This case is no exception; and, indeed may be more difficult most – given Mr. Robertson's prior record for committing essentially the same conduct. A non-custodial sentence, however, will serve the dual purpose of ensuring that the financial harm Mr. Robertson has caused is rectified, while ensuring that Mr. Robertson's mental health issues and significant medical conditions are addressed without burdening the already overwhelmed Bureau of Prisons medical system.

For the forgoing reasons, pursuant to the sentencing factors set forth in 18 U.S.C. §3553(a) and in light of sentencing factors set forth in 18 U.S.C. §3553(a) as delineated in *Rita v. United States*, 127 S. Ct. 2456 (2007), *Kimbrough v. United States*, 128 S. Ct. 558 (2007) and

*Gall v. United States*, 128 S. Ct. 586 (2007), Mr. Robertson respectfully submits that the requested sentence of five years probation, with the special conditions that Mr. Robertson pay restitution in the amount of $425,000; Mr. Robertson continue with his mental health treatment; and, complete twelve months of Home Confinement is "sufficient, but not greater than necessary, to comply with the purposes" set forth in 18 U.S.C. §3553.

                                         Respectfully submitted,
                                         A.J. KRAMER
                                         FEDERAL PUBLIC DEFENDER
                                              /s/
                                         David W. Bos
                                         Counsel for Mr. Robertson